# EXHIBIT 2

Chris Daniel - District Clerk Harris County
Envelope No. 801624
By: Sharon Carlton

CAUSE No. 2014-_____

| | | |
|---|---|---|
| LOTTE CHEMICAL TITAN (M) | § | IN THE DISTRICT COURT |
| SENDIRIAN BERHAD, | § | |
| | § | |
| Judgment Creditor, | § | |
| | § | _____ JUDICIAL DISTRICT |
| VS. | § | |
| | § | |
| WARREN WILDER, | § | |
| | § | |
| Judgment Debtor | § | HARRIS COUNTY, TEXAS |

## NOTICE OF FILING AND MOTION FOR RECOGNITION
## OF FOREIGN COUNTRY JUDGMENT

TO:     Judgment Debtor Warren Wilder, by hand delivery and certified mail delivered to 6645 Westchester Street, Houston, Texas 77005.

Lotte Chemical Titan (M) Sendirian Berhad f/k/a Titan Petchem (M) Sendirian Berhad ("***Titan Petchem***") hereby files and seeks to enforce its judgment against Warren Wilder pursuant to the Texas version of the Uniform Foreign Country Money-Judgment Recognition Act, TEX. CIV. PRAC. & REM. CODE §§ 36.001-008 (the "***Foreign Recognition Act***").

### I.     PARTIES

1.     Judgment Creditor Titan Petchem is a Malaysian company with its registered office at 6th floor, Bangunan Malaysian Re, No. 17, Lorong Dungun, Damansara Heights, 50490 Kuala Lumpur, Malaysia.

2.     Judgment Debtor Warren Wilder is a citizen of the United States who maintains a residence at 6645 Westchester Street, Houston, Texas 77005.

### II.     JURISDICTION AND VENUE

3.     Judgment Debtor Wilder is subject to the Court's jurisdiction because of his continuous and systematic contacts with the state of Texas.

Certified Document Number: 60144897 - Page 1 of 5

4.      The Court has subject matter jurisdiction over this matter pursuant to the Texas Foreign Recognition Act, TEX. CIV. PRAC. & REM. CODE §§ 36.001-008.

5.      Venue is proper in this District pursuant to Texas Civil Practice and Remedies Code § 36.0041 because the judgment debtor maintains a residence in this District, and because persons and assets for partially satisfying the judgment are located within this District.

### III.    BACKGROUND

**A.      Wilder Breached His Employment Agreement with Titan Petchem by Failing to Make Certain Tax Equalization Payments.**

6.      This action arises from Wilder's breach of the employment agreement with Titan Petchem dated October 7, 2008 (the "***Employment Agreement***"), a copy of which is attached hereto as Exhibit A.  Under the terms of the Employment Agreement, Titan Petchem appointed Wilder as Managing Director of Lotte Chemical Titan Holding Sendirian Berhad f/k/a Titan Chemical Corp. ("***Titan Chemical***"), a Malaysian company, and agreed to pay him a salary and certain bonus payments.  *Id.*  In return, the Employment Agreement obligated Wilder (among other things) to pay Titan Petchem certain end-of-year "tax equalization" payments.  *Id.* at Clause 26.  The Employment Agreement states that it "shall be governed by and interpreted in accordance with Malaysian law" and that the parties "submit to the exclusive jurisdiction of the Malaysia courts …."  *Id*. at Clause 29.1-29.2.

7.      Wilder failed to make a required tax equalization payment in the sum of $179,220.00 for the calendar year of 2010.  At various times in 2011 and 2012, attorneys acting on behalf of Titan Petchem informed Wilder of his obligation to pay Titan Petchem the outstanding tax equalization sum.  After Wilder refused to pay, Titan Petchem commenced suit against Wilder for breach of contract in Malaysia, in accordance with Malaysian law.  A certified

Certified Document Number: 60144897 - Page 2 of 5

translation of the Malaysian Originating Summons against Wilder is attached hereteo as Exhibit B.

**B.     Titan Petchem Obtained a Conclusive, Final Money Judgment Against Wilder in Malaysia Based on His Breach of the Employment Agreement.**

8.      Titan Petchem filed its claim for breach of contract against Wilder in the Sessions Court at Kuala Lumpur in Kuala Lumpur, Malaysia—a tribunal which affords defendants in civil cases due process opportunities similar to the process provided in courts of the United States. Titan Petchem subsequently obtained a judgment against Wilder in the Sessions Court at Kuala Lumpur, dated December 6, 2013 (the "***Malaysian Judgment***") for breach of the Employment Agreement based on his non-payment of the tax equalization payments.  A certified translation of the Malaysian Judgment is attached hereto as Exhibit C.

9.      The Malaysian Judgment holds that Wilder is "in breach of the Employment Agreement dated 10.7.2008 for failing to pay [Titan Petchem] the agreed tax equalization sum of USD 179,220.00."  Malaysian Judgment at (I).  It also provides that Wilder "be ordered to pay [Titan Petchem] the tax equalization sum of USD 179,220.00 together with interest calculated at the rate of 5% per annum from the date of 30.6.2011 [June 30, 2011] …."  *Id*. at (II).

10.     In addition to issuing judgment against Wilder in the amount of $179,220.00 plus pre-judgment interest (the "***Judgment Sum***"), the Malaysian Judgment assesses post-judgment "[i]nterest at the rate of 5% per annum on the Judgment Sum from the date of the Judgment until the date of full and final settlement …."  *Id*. at (III).

**IV.     THE TEXAS FOREIGN RECOGNITION ACT**

11.     The Texas Foreign Recognition Act governs the enforcement and recognition of foreign judgments in the state of Texas.  TEX. CIV. PRAC. & REM. CODE §§ 36.001-008.  The Act provides that "any foreign judgment that is final and conclusive and enforceable where rendered"

Certified Document Number: 60144897 - Page 3 of 5

is "enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." *Id*. § 36.004. The party seeking to enforce the foreign judgment under the Texas Foreign Judgment Act may file a copy of the judgment with the clerk of the court in the judgment debtor's county of residence. *Id*. § 36.0041.

12.     The Malaysian Judgment is final, conclusive, and fully enforceable against Wilder in Malaysia. Furthermore, judgments of the Malaysian legal system are entitled to full faith and credit within the United States and to recognition under the Texas Foreign Recognition Act. *See Simcox v. McDermott Int'l., Inc.*, 152 F.R.D. 689, 695 (S.D.T.X. 1994) (finding the Malaysian legal system adequate and noting that "plaintiffs could enforce any judgment it obtained [in Malaysia] … in the United States under the Uniform Enforcement of Foreign Judgments Act[,] TEX. CIV. PRAC. & REM. CODE ANN. § 35.003."). Recognition of the Malaysian Judgment is therefore proper under the Texas Foreign Recognition Act. *See id*.

## V.     NOTIFICATION

13.     Wilder is hereby notified that Titan Petchem, the judgment creditor, has filed a certified translation of the Malaysian Judgment with this Court. The filing of the Malaysian Judgment before this Court is made under the provisions of the Texas Foreign Recognition Act, TEX. CIV. PRAC. & REM. CODE §§ 36.001-008.

14.     To contest recognition of the Malaysian Judgment, Wilder must, not later than the 60th day after the date of service of this Notice of Filing, file with the Court and serve Titan Petchem with a copy of a motion for non-recognition of the Malaysian Judgment on the basis of one or more grounds under Section 36.005 of the Texas Civil Practice & Remedies Code.

- 4 -

Certified Document Number: 60144897 - Page 4 of 5

## VI.   CONCLUSION

15.   For the reasons above, Titan Petchem respectfully requests that the Court grant full faith and credit to the Malaysian Judgment for the purpose of enforcing it in Texas, including the enforcement of post-judgment interest accruing from the date of the Malaysian Judgment until such judgment is satisfied.

DATED this 24th day of March, 2014.

Respectfully submitted,

**VINSON & ELKINS LLP**

*/s/ Phillip B. Dye, Jr.*
Phillip B. Dye, Jr.
State Bar No. 06311500
Charles M. Rosson
State Bar No. 24074985
Tel: (713) 758-2048
Fax: (713) 615-5766
1001 Fannin Street
Suite 2500
Houston, Texas 77002
pdye@velaw.com
crosson@velaw.com

**ATTORNEY-IN-CHARGE FOR JUDGMENT CREDITOR LOTTE CHEMICAL TITAN (M) SENDIRIAN BERHAD**

US 2370087v.1

Certified Document Number: 60144897 - Page 5 of 5



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 11, 2014

Certified Document Number:        60144897 Total Pages:  5

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT A

Certified Document Number: 60144898 - Page 1 of 12

## Employment Agreement – WARREN W WILDER

**This Agreement is made on this**    10th    day of    July    2008

Between

(1)    **TITAN PETCHEM (M) SDN. BHD.** (Co. No 154990-W) having its registered office at 6th Floor, Bangunan Re, No. 17, Lorong Dungun, Damansara Heights, Kuala Lumpur (hereinafter referred to as "the Company"); and

(2)    **WARREN W. WILDER** (US Passport No. 134540601, 6645 Westchester Street, Houston, Texas,, 77005 USA (hereinafter referred to as "the Officer").

**WHEREAS** :

(A)    The Company has offered to the Officer and the Officer has agreed to accept the offer of employment as Managing Director in the Company and subject to the conditions herein appearing:

**NOW THIS AGREEMENT WITNESSETH as follows:-**

1.    **Definitions and Interpretation**

1.1    In this Agreement unless the context otherwise requires the following expressions have the following meanings:

**Chairman** means the Chairman of the Board of Directors and Executive Chairman of the corporate management.

**Confidential Information** means information relating to the business, products, affairs and finances of the Company or of any subsidiaries of the Company for the time being confidential to it or to them and trade secrets (including, without limitation, technical data and know-how) relating to the business of the Company or of any subsidiaries of the Company or of any of its or their suppliers, clients or customers

**Employment** means the Officer's employment under this Agreement

**Intellectual Property** means all patents, registered designs, trade marks and service marks (whether registered or not and including any applications for the foregoing), copyrights, design rights, semiconductor topography rights, database rights and all other intellectual property and similar proprietary rights subsisting in any part of the world (whether or not capable of registration) and including (without limitation) all such rights in materials, works, prototypes, inventions, discoveries, techniques, computer programs, source codes, data, technical, commercial or confidential information, trading, business or brand names, goodwill or the style of presentation of the goods or services or any improvement of any of the foregoing and the right to apply for registration or protection of any of them and in existing applications for the protection of any of the above

**Point of Origin** means Houston, TX, USA

**Salary** means the salary referred to in clause 7.1

**Termination Date** means the date of the termination of the Employment

**Territory** means such places of operation of the Company in Malaysia, Singapore, Indonesia and Southeast Asia.

1.2    References to clauses and schedules are unless otherwise stated to clauses of and schedules to this Agreement

1

Certified Document Number: 60144898 - Page 2 of 12

1.3   The headings to the clauses are for convenience only and shall not affect the construction or interpretation of this Agreement.

**2.   Appointment**

2.1   The Company appoints the Officer and the Officer agrees to act as Managing Director of the Company on the terms of this Agreement and to undertake the duties and responsibilities of the Managing Director including, but not limited to those contained Exhibit A attached. The Officer represents and warrants that he is not bound by or subject to any court order, agreement, arrangement or undertaking which in any way restricts or prohibits him from entering into this Agreement or from performing his duties under it.

**3.   Duration of the Employment**

3.1.   The Officer's Employment shall commence 10th July 2008 and, subject to the provisions of this Agreement, shall continue until 9th July, 2013, (the Fixed Term Period), and thereafter the contract will be renewed annually and automatically unless and until terminated by either party with a six (6)  month advance written notice  prior to the expiry of the contract period.

**4.   Scope of the Employment**

4.1   During the Employment the Officer shall:

   (a)   devote his time, attention and skill to the business and affairs of the Company during the hours of work described in clause 5 except during holidays, personal leave, periods of absence due to ill health, and other times mutually agreed by the parties;

   (b)   faithfully, competently and diligently perform such duties and exercise such powers consistent with his position as may from time to time be assigned to or vested in him by the Chairman;

   (c)   obey the lawful directions of the Chairman;

   (d)   comply with all the Company's rules, regulations, policies and procedures from time to time in force; and

   (e)   keep the Chairman at all times promptly and fully informed (in writing if so requested) of his conduct of the business of the Company and any Group Company and provide such explanations in connection with it as the Chairman may require.

   (f)   execute such documents which are required to enforce discipline in the Company including the Business Ethics & Code of Conduct (BECOC)

4.2   The Officer shall if and so long as the Company requires and without any further remuneration carry out his duties on behalf of any Group Company and act as a director or officer of any Group Company.

4.3   The Company may at its sole discretion transfer this Agreement to any Group Company at any time.

**5.   Hours of work**

The Working days are from Monday to Friday. The Officer's normal working hours are as follows:

Monday through Friday

8.30a.m. to 5.30p.m.

Given the nature of position, the above are guidelines only – the Officer is expected to work whatever hours are needed to execute the role effectively. The Company reserves rights to

2

Certified Document Number: 60144898 - Page 3 of 12

change the Officer's working hours from time to time and the Officer's required to work beyond the working hours or to perform prolonged hours work to suit its operation needs.

**6.   Place of work**

The Officer will work at or from a base at Kuala Lumpur and Pasir Gudang/Tanjong Langsat, Johor, Malaysia but the Company may require the Officer to work at any place (whether inside or outside Malaysia) for such reasonable periods as the Company may from time to time require.

**7.   Remuneration**

7.1   The Company shall pay to the Officer the Salary, (also referred to as base pay), at the rate equivalent of USD Three Hundred Thirty Thousand (USD $330, 000) only per annum, on or at the end of each month by credit transfer to his bank account payable in Ringgit Malaysia by equal monthly instalments in arrears (or such other sum as may from time to time be agreed).

7.2   The Officer's Salary shall be reviewed annually at the fourth (4th) quarter of the year based on performance versus key performance indicators and goals. The review will be conducted with Company's Remuneration & Nomination Committee.

7.3   The Officer shall be entitled to an annual short-term bonus payment awarded in cash in arrears and based on actual performance versus key performance indicators and goals with a target rate of USD $270,000 of salary. For the initial period from 10 July to 31 December for the 2008 award a pro-rata payment of the actual earned award for the year will be paid. Actual awards will be determined during first quarter of each year, and granted by the end of January, following a review with the Remuneration & Nomination Committee.

7.4   The Officer shall be entitled to a monthly completion gratuity calculated on the basis of USD $3,500 in lieu of participating in a retirement program, which shall be payable in Ringgit Malaysia monthly, on or at the end of each month by credit transfer to his bank account.

7.5   The Company shall be entitled to deduct from any sum due to the Officer under the terms of this Agreement any monies which are owed by the Officer to the Company.

**8.   Accommodation and living expenses**

The Company will provide the Officer with a package of accommodation and living expenses as follows:

(a)   A Housing Allowance of RM20,000.00 per month to offset housing expenses. The amount of the allowance may be adjusted as approved by the Chairman if reasonable actual expenses are found to be exceeding this allowance on a consistent basis. The Housing Allowance shall commence July 15, 2008 and will be payable in advance by credit transfer to Officer's bank account.

(b)   To pay for all charges for internet access and services, business telephone expenses, property and household insurance expenses, security, and pest control services in connection with the Property.

(c)   To pay and discharge all rates for the Property.

**9.   Transportation & Travel**

9.1   The Company shall provide the Officer with a fully-maintained car of a size and type deemed appropriate by the Managing Director for the proper performance of his duties. The car shall be in the range up to Mercedes Benz S320, but in no cases lower than a Volvo S80.

9.2   The Company shall tax and comprehensively insure the car and pay or reimburse, as appropriate, against receipts. The Officer will be permitted to use the car for reasonable private use and the Company will meet the cost of fuel for such purposes.

3

Certified Document Number: 60144898 - Page 4 of 12

9.3     The Company such maintain the Company car fully and shall provide a driver to the Officer at all times, as well as driver services where needed to discharge his duties.

9.4     The car will be replaced from time to time by the Company in accordance with the Company's car policy and safety and security considerations.

9.5     The Officer shall be entitled to unlimited air travel and hotel accommodations to ensure proper performance of his duties and adequate security.

**10.    Expenses**

10.1    The Company shall reimburse the Officer in respect of all expenses reasonably incurred by him in the proper performance of his duties, subject to his providing such receipts or other appropriate evidence as the Company may require.

**11.    Holidays & Vacation**

11.1    The Officer shall be entitled, in addition to all Public holidays normally observed in Johor and Selangor, Malaysia, to 25 working days' paid holiday per annum.

11.2    If, on the termination of the Employment, the Officer has exceeded his accrued holiday entitlement, the value of such excess, calculated by reference to clause 11.1 and the Salary, may be deducted by the Company from any sums due to him. If the Officer has any unused holiday entitlement, the Company shall at its discretion either requires the Officer to take such unused holiday during any notice period or make a payment to him in lieu of it, calculated in accordance with this clause 11.1.

**12.    Sickness benefits**

12.1    Subject to clause 17 the Company shall continue to pay the Salary for:

     (a)    up to a maximum of 22 working days' absence on medical grounds in any period of 12 calendar months where no hospitalisation is required; or

     (b)    up to a maximum of 60 working days' absence inclusive that of clause 12.1(a) on medical grounds in any period of 12 calendar months if hospitalisation is required.

whichever is the lesser, provided that the Officer shall from time to time if required:

         (i)    supply the Company with medical certificates covering any period of sickness or incapacity exceeding seven days (including weekends); and

         (ii)    undergo at the Company's expense, by a doctor appointed by the Company, any medical examination.

12.2    Payment in respect of any other or further period of absence shall be at the Company's discretion.

12.3    Any payment to the Officer pursuant to clause 12.1 shall be subject to set off by the Company in respect of any Statutory Sick or other benefits to which the Officer may be entitled.

12.4    Subject to clause 12.3, when all sick pay entitlement pursuant to clause 12.1 has been exhausted, no further salary will be payable by the Company to the Officer until the Officer has returned to active service of the Company.

12.5    If the Officer's absence shall be occasioned by the actionable negligence of a third party in respect of which damages are recoverable, then the Officer shall:

     (a)    notify the Company immediately of all the relevant circumstances and of any claim, compromise, settlement or judgment made or awarded in connection with it;

4

Certified Document Number: 60144898 - Page 5 of 12

(b)    give to the Company such information concerning the above matters as the Company may reasonably require; and

(c)    if the Company so requires, refund to the Company any amount received by him from any such third party provided that the refund shall be no more than the amount which he has recovered in respect of remuneration.

**13.   Medical insurance**

13.1   The Officer shall be provided with personal and hospitalization insurance, medical, and other fringe benefits in accordance with Company policies and practices, which are subject to the discretion of the management. This coverage would apply to the Officer's dependent spouse and dependant children where applicable and in accordance with plan provisions..

13.2   The Company shall, from time to time, be entitled to require the Officer to undertake a medical examination with a doctor of the Company's choice.

**14.   Restrictions during the Employment**

14.1   During the Employment the Officer shall not directly or indirectly be employed, engaged, concerned or interested:

(a)    in any other business or undertaking; or

(b)    in any activity which the Company reasonably considers may be, or become, harmful to the interests of the Company or of any Group Company or which might reasonably be considered to interfere with the performance of the Officer's duties under this Agreement.

14.2   Clause 14.1 shall not apply to any act undertaken by the Officer with the prior written consent of the Company. The Company consents to the Officer serving on the Board of Directors of ICO, Inc.

14.3   The Officer shall comply with every rule of law, the Bursa Malaysia Stock Exchange Listing Requirements for transactions in securities by directors of listed companies, certain employees and persons connected with them and every regulation of the Company for the time being in force in relation to dealings in shares or other securities of the Company or any Group Company.

**15.   Confidential information and company documents**

15.1   The Officer shall neither during the Employment (except in the proper performance of his duties or with the express written consent of the Company) nor at any time (without limit) after the termination of the Employment except in compliance with an order of a competent court:

(a)    divulge or communicate to any person, company, business entity or other organisation;

(b)    use for his own purposes or for any purposes other than those of the Company or any Group Company; or

(c)    through any failure to exercise due care and diligence, permit or cause any unauthorised disclosure of any Confidential Information.

These restrictions shall cease to apply to any information which shall become available to the public generally otherwise than through any breach by the Officer of the provisions of this Agreement or other default of the Officer.

15.2   The Officer acknowledges that all books, notes, memoranda, records, lists of customers and suppliers and employees, correspondence, documents, computer and other discs and tapes, data listings, codes, designs and drawings and other documents and material whatsoever

5

Certified Document Number: 60144898 - Page 6 of 12

(whether made or created by the Officer or otherwise) relating to the business of the Company or any Group Company (and any copies of the same):

(a)    shall be and remain the property of the Company or the relevant Group Company; and

(b)    shall be handed over by the Officer to the Company or to the relevant Group Company on demand and in any event on the termination of the Employment and the Officer shall certify that all such property has been handed over on request by the Company.

### 16.   Inventions and other intellectual property

16.1   The parties foresee that the Officer may make inventions or create other Intellectual Property in the course of his duties and agree that in this respect the Officer has a special responsibility to further the interests of the Company and any Group Company.

16.2   Any invention, improvement, design, process, information, copyright work, computer program, trade mark, trade name or get-up, work or other output (**Work**) made, created or discovered by the Officer during the Employment (whether capable of being patented or registered or not and whether or not made or discovered in the course of the Employment) in conjunction with or in any way affecting or relating to the business of the Company or of any Group Company or capable of being used or adapted for use in or in connection with such business, together with all Intellectual Property subsisting therein, (collectively **Intellectual Property Rights**) shall be disclosed immediately to the Company and shall (subject to Patents Act 1983) belong to and be the absolute property of the Company or such Group Company as the Company may direct and the Officer hereby assigns to the Company with full title guarantee and by way of present assignment of future rights, all such copyright, database rights, design rights (and any other Intellectual Property capable of assignment by way of present assignment of future rights) which may fall within the definition of the Intellectual Property Rights absolutely for the full term of those rights.

16.3   If and whenever required so to do by the Company the Officer shall at the expense of the Company or such Group Company as the Company may direct:

(a)    apply or join with the Company or such Group Company in applying for patent or other protection or registration in Malaysia and in any other part of the world for any Intellectual Property Rights; and

(b)    execute all instruments and do all things necessary for vesting all Intellectual Property Rights (including such patent or other protection or registration when so obtained) and all right, title and interest to and in them absolutely, with full title guarantee and as sole beneficial owner, in the Company or such Group Company or in such other person as the Company may specify.

16.4   The Officer irrevocably and unconditionally waives all rights under Copyright Act 1987 in connection with his authorship of any existing or future copyright work in the course of the Employment, in whatever part of the world such rights may be enforceable including, without limitation:

(a)    the right conferred by of that Act to be identified as the author of any such work; and

(b)    the right conferred by that Act not to have any such work subjected to derogatory treatment.

16.5   Nothing in this clause 16 shall be construed as restricting the rights of the Officer or the Company under sections Patents Act 1983.

### 17.   Termination

17.1   The Chairman of the Board of the Company shall have the discretion to terminate the Employment of the Officer lawfully without any notice, however, in the event of;

6

Certified Document Number: 60144898 - Page 7 of 12

(a)    The Officer's involuntary termination, except in the case of misconduct or gross negligence which include, but are not limited to;

    (i)    commits any serious breach of this Agreement or is guilty of any gross misconduct, or any wilful neglect in the discharge of his duties;

    (ii)    repeats or continues (after warning) any breach of this Agreement;

    (iii)    is guilty of any fraud, dishonesty or conduct tending to bring himself, the Company or any Group Company into disrepute;

    (iv)    commits any act of bankruptcy or takes advantage of any statute for the time being in force offering relief for insolvent debtors;

    (v)    is convicted of any Malaysian criminal offence (other than minor offences under the Road Traffic Acts or the Road Safety Acts for which a fine or non-custodial penalty is imposed) which might reasonably be thought to affect adversely the performance of his duties;

    (vi)    is disqualified from holding office in the Company or in any other company by reason of any order made under the Companies Act 1965 or any other enactment;

    (vii)    becomes of unsound mind or becomes a patient for any purpose of any statute relating to mental health;

(b)    A change in controlling ownership of the Company, and, or,

(c)    A change in the Officer's duties and responsibilities that would result in an assignment with lesser responsibilities and status,

Officer will be provided a severance payment equal to the sum of twelve months of the then current base and the annual cash bonus not to exceed 50% of base pay in the event of (a) and at his option under (b) and (c). Additionally, under items (b) and (c) above. However, if the Officer returns directly to Westlake Chemical Corporation after termination of employment with the Company he will not be eligible for the severance provisions outlined above.

Any delay by the Company in exercising its right of termination shall not constitute a waiver of it.

17.2    On the termination of the Employment, whether voluntary or involuntary the Officer shall immediately deliver to the Company all materials within the scope of clause 15.2, any Company car, mobile telephone or other Company equipment in his possession and all keys, credit cards, and other property of or relating to the business of the Company or of any Group Company which may be in his possession or under his power or control.

**18.    Disciplinary and grievance procedures**

18.1    There are no special disciplinary rules which apply to the Officer and any disciplinary matters affecting him will be dealt with by the Chairman or the Board of Directors.

**19.    Employees Fund Contribution**

19.1    The Officer shall not participate in the Employees Fund Scheme administered by the Company.

**20.    Home Leave**

The Company shall provide expenses for the return of the Officer and his family, including secondary school or college-aged dependent children attending school in the US to or from the Officer's point of origin once every twelve months period. The expenses shall include economy class airfare, reasonable ground transportation and miscellaneous travel expenses.

7

In the event the Officer shall choose to travel to or from points other than his point of origin he shall be given assistance equivalent to Kuala Lumpur- Houston airfare.

**21.** **Work Permit & Documentation**

21.1    This contract of Employment is subject to the issuance of a valid work permit by the Malaysian Government.

21.2    In the event the work permit is not issued or revoked at any time during the Employment due to the Officer's personal acts and behaviour or unlawful act this Agreement shall cease to have effect in which event neither party shall have a claim against the other. If the work permit is not issued or is revoked during Employment through no cause of the Company or the Officer, the Company and the Officer work to find alternative solutions to allow the officer to continue to undertake his role as Managing Director.

21.3    In the event this Agreement cannot be carried out due to geopolitical turbulence, acute political unrest or terrorists' activities in Malaysia, both parties hereof shall jointly determine acceptable termination of and remuneration under this Agreement.

21.4    The Company will assume all costs associated with obtaining and maintaining required work permits, visas, passports, inoculations, etc., for the Officer and his dependent family members.

**22.** **Club memberships**

The Officer shall be entitled to the following club memberships of his choice:-

a)    Golf Club memberships – one

b)    Social Club membership – one

**23.** **Medical Examination**

The Officer will be required to undergo a Company-paid medical examination annually. The Officer's spouse and dependent children who accompany the Officer will be provided a medical examination prior to their departure. Any inoculations and examinations required for the specific assignment in Malaysia will be paid by the Company.

**24.** **Education Assistance**

The Company will assist in the placement of your dependent children (K-12) accompanying the Officer in Malaysia in the American School or equivalent educational facility at the Company's expense, including the arranging adequate transportation for the children to attend school.

**25.** **Relocation**

The Officer shall be entitled to the following relocation benefits

(a)    In the event the Officer elects to sale his primary residence at the point of origin he will be provided reimbursement for the closing costs on the sale consistent with normal local practices. If the Officer elects to lease his home during the term of this agreement the company will reimburse the Officer for reasonable costs associated with arranging the lease and minor upkeep of the home.

(b)    30 days temporary living expenses for the Officer's family while in ~~Taipei~~ *Houston* during transition to Malaysia

(c)    Temporary living expenses while in Malaysia not to exceed 30 days, subject to extension by approval of the Chairman.

(d)    Business Class air transportation, including 30 kgs of excess baggage for the Officer and his family, to take up the assignment from Houston.

8

(e)     Other personal belonging will be sent by sea transport at the Company's expense, not to exceed one month's base salary.

**26.     Tax Equalization**

To the extent necessary to ensure that the Officer does not incur taxes in amount greater or less than what would be otherwise incurred in event of a USA based assignment, Officer will be eligible for a tax equalization program to include a hypothetical tax calculation and year-end reconciliation.   The Company will pay all Malaysian based taxes for which Officer becomes liable pursuant to his assignment.   The Company will provide tax preparation assistance to Officer each year throughout the term of employment through an outside accounting firm, currently PricewaterhouseCoopers.

**27.     Repatriation Assistance**

Upon expiring or early termination of this Agreement, the Company shall provide the following repatriation assistance:-

27.1    Business class air fair to the Point of Origin including 30kgs of excess baggage for the Officer and his family members.

27.2    Transportation cost reimbursement for all personal belongings and furniture of the Officer and his family by sea transport.

27.3    Up to 30 days temporary living expenses at the Point of Origin.

**28.     Notices**

28.1    Any notice or other document to be given under this Agreement shall be in writing and may be given personally to an Officer or to the Secretary of the Company (as the case may be) or may be sent by first class post or other fast postal service or by facsimile transmission to, in the case of the Company, its registered office for the time being and in the case of the Officer either to his address shown on the face of this Agreement or to his last known place of residence.

28.2    Any such notice shall (unless the contrary is proved) be deemed served when in the ordinary course of the means of transmission it would first be received by the addressee in normal business hours.   In the case of first class post, this shall be deemed to be no later than two working days after posting. In proving such service it shall be sufficient to prove, where appropriate, that the notice was addressed properly and posted, or that the facsimile transmission was despatched.

**29.     Choice of law and submission to jurisdiction**

29.1    This Agreement shall be governed by and interpreted in accordance with Malaysian law.

29.2    The parties submit to the exclusive jurisdiction of the Malaysian courts but this Agreement may be enforced by the Company or Officer in any court of competent jurisdiction.

**30.     General**

The expiration or termination of this Agreement shall not prejudice any claim which either party may have against the other in respect of any pre-existing breach of or contravention of or non-compliance with any provision of this Agreement nor shall it prejudice the coming into force or the continuance in force of any provision of this Agreement which is expressly or by implication intended to or has the effect of coming into or continuing in force on or after such expiration or termination.

9

Certified Document Number: 60144898 - Page 10 of 12

IN WITNESS WHEREOF the parties hereto have hereunto set their hand and seals the day and year first above written:-

Signed by ............. ...........................)

for and on behalf of the Company      )

in the presence of :-      )

Signed by the Officer      )

in the presence of:-      )

10

Certified Document Number: 60144898 - Page 11 of 12

[EXIBIT A]

## MANAGING DIRECTOR – TITAN CHEMICAL

*Responsibilities*

Headquartered in Kuala Lumpur, Malaysia, the Managing Director will have full P&L responsibility for the company and lead its 2,000-person organization. Direct reports to the position include Executive Vice President Operations & New Projects, Sr. Vice President, Olefins & Aromatics Business & Logistics, Vice President, Polymers, Sr. Vice President, HR/IT, Sr. Vice President & CFO, Sr. Vice President & General Counsel. The Managing Director will be expected to continue the successful and profitable operation of the businesses and manage growth throughout the region, both by market expansion and by identifying and exploiting new product and market opportunities. Reporting to the Executive Chairman, the Managing Director will have full responsibility for success of the businesses and organization in the region. The Managing Director will also be a member of the company's Board of Directors and will represent the company actively with the management team and employees and the public at large.

11

Certified Document Number: 60144898 - Page 12 of 12



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 11, 2014

Certified Document Number:        60144898 Total Pages:  12

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B

Certified Document Number: 60144899 - Page 1 of 25

4259290 1200175547 22/08/2013 15:14:31
B54-37-08/2013
SS33........................200.0 X 1
Jumlah RM*********************200.00

**DALAM MAHKAMAH SESYEN DI KUALA LUMPUR**

**DALAM WILAYAH PERSEKUTUAN KUALA LUMPUR, MALAYSIA**

SAMAN PEMULA NO: _____ -2013

<table>
<tr><td></td><td>Dalam perkara mengenai Aturan 5 Kaedah 4, Kaedah-kaedah 7 and 28 Kaedah-kaedah Mahkamah 2012;</td></tr>
<tr><td></td><td>Dan</td></tr>
<tr><td></td><td>Dalam perkara mengenai Akta Kontrak 1950;</td></tr>
<tr><td></td><td>Dan</td></tr>
<tr><td></td><td>Dalam perkara mengenai seksyen 65(1)(b), dan seksyen 65(5)(b) Akta Mahkamah Rendah 1948;</td></tr>
<tr><td></td><td>Dan</td></tr>
<tr><td></td><td>Dalam perkara mengenai Perjanjian Pekerjaan bertarikh 10.7.2008;</td></tr>
<tr><td></td><td>Dan</td></tr>
<tr><td></td><td>Dalam perkara mengenai Hitungan Penyelesaian Terakhir setakat 9 November 2010</td></tr>
</table>

ANTARA

LOTTE CHEMICAL TITAN (M) SDN. BHD..

(sebelum ini dikenali sebagai Titan Petchem (M) Sdn. Bhd.)

(No. Syarikat: 154990-W) ...PLAINTIF

DAN

WARREN WILLIAM WILDER

(No. Pasport Amerika Syarikat: 134540601) ...DEFENDAN

**SAMAN PEMULA**

**BENARKAN** Warren William Wilder beralamat di 6645 Westchester, Street Houston, Texas 77005, Amerika Syarikat, hadir di hadapan Hakim dalam Kamar pada hari 26-Aug-2013 haribulan , 2013, pukul 9.00 pagi/petang, atas pendengaran suatu permohonan oleh plaintif yang dinamakan di atas, bagi Perintah-perintah di bawah:-

**Note . Serial number will be used to verify the originality of this document via eFILING portal

Certified Document Number: 60144899 - Page 2 of 25

2

(I)     Satu deklarasi bahawa Defendan telah memungkir Perjanjian Pekerjaan bertarikh 10.7.2008 kerana gagal membayar kepada Plaintif cukai penyamaan (*tax equalization*) yang dipersetujui berjumlah USD179,220.00;

(II)    Bahawa Defendan diperintahkan untuk membayar kepada Plaintif cukai penyamaan (*tax equalization*) berjumlah USD179,220.00 bersama dengan faedah pada kadar 5% setahun dari 30.6.2011 sehingga tarikh Penghakiman;

(III)   Ganti Rugi Am;

(IV)    Faedah pada kadar 5% setahun atas Jumlah Penghakiman dari tarikh Penghakiman ini sehingga tarikh penyelesaian penuh dan muktamad;

(V)     Kos; dan

(VI)    Lain-lain relief atau relif-relif yang selanjutnya yang dianggap sesuai dan berpatutan oleh Mahkamah yang mulia ini.

Fakta-fakta yang membentuk kausa tindakan Plaintif untuk relief-relief yang dipohon di dalam Saman Pemula di sini adalah seperti yang berikut:-

(a)     Defendan dilantik sebagai Pengarah Urusan bagi Plaintif dari 10.7.2008 sehingga 9.11.2010 melalui suatu Perjanjian Pekerjaan bertarikh 10.7.2008 ("**Perjanjian Pekerjaan**") yang dimasuki di antara Plaintif dan Defendan. Di antara manfaat-manfaat yang lain, Defendan dibayar gaji sebanyak USD330,000.00 setahun yang akan dibayar pada/atau di

Certified Document Number: 60144899 - Page 3 of 25

S\N 5HS2C3ALX8Y0

**Note   Serial number will be used to verify the originality of this document via eFILING portal

3

penghujung bulan secara 12 ansuran bulanan ke dalam bank account Defendan di Amerika Syarikat.

(b)  Klausa-klausa penting dalam Perjanjian Pekerjaan, *antara lain*, adalah seperti berikut:-

Klausa 3    Tempoh Pekerjaan

Pekerjaan Pegawai hendaklah bermula dari 10 Julai 2008 dan, tertakluk kepada peruntukan-peruntukan dalam Perjanjian ini, hendaklah berterusan hingga 9 Julai, 2013, (Jangka Masa Tetap), dan selepas itu kontrak akan diperbaharui setiap tahun dan secara automatik kecuali dan sehingga ditamatkan oleh salah satu pihak dengan notis bertulis terdahulu bagi enam (6) bulan sebelum tamat tempoh kontrak.

Klausa 17    Penamatan (*Termination*)

17.1   Pengerusi Pengarah Syarikat seharusnya mempunyai budibicara untuk menamatkan Pengajian Pegawai tersebut secara sah tanpa notis, walau bagaimanapun, sekiranya;

(a) Penamatan oleh Pegawai secara tanpa rela, kecuali di dalam kes salah laku atau kecuaian melampau di mana termasuk, tetapi tidak terhad kepada;

(i) melakukan mana-mana kemungkiran Perjanjian secara serius atau bersalah bagi kecuaian melampau, atau mana-mana pengabaian teruk dalam menjalankan tugas-tugas beliau;

(ii) pengulangan atau penerusan (selepas amaran) dalam kemungkiran Perjanjian ini;

**Note   Serial number will be used to verify the originality of this document via eFILING portal

4

(iii) bersalah atas sebarang penipuan, ketidakjujuran atau kelakuan yang bercenderung membawa beliau, Syarikat atau mana-mana Kumpulan Syarikat kepada keaiban;

(iv) melakukan sebarang perbuatan kebankrapan atau mengambil kesempatan terhadap sebarang akta yang sedang berkuatkuasa menawarkan relif kepada penghutang-penghutang yang tidak berkemampuan;

(v) telah disabit kesalahan jenayah Malaysia (selain daripada kesalahan-kesalahan kecil di bawah *Road Traffic Acts* atau *Road Safety Acts* yang mana denda atau denda bukan penjara dikenakan) di mana mungkin secara munasabah difikirkan akan membawa kesan yang memudaratkan persembahan kewajipan-kewajipan beliau;

(vi) disingkirkan daripada memegang jawatan dalam Syarikat atau di mana-mana syarikat lain atas alasan bahawa perintah dibuat di bawah Akta Syarikat 1965 atau sebarang enakmen;

(vii) menjadi tak sempurna akal atau menjadi pesakit bagi mana-mana makna di dalam akta berkaitan dengan kesihatan mental;

(b) terdapat perubahan di dalam kuasa pemilikan di dalam Syarikay, dan, atau,

(c) terdapat perubahan di dalam kewajipan-kewajipan Pegawai dan tanggungjawab yang mengakibatkan pemberian tugas yang kurang tanggungjawab dan taraf;

Pegawai akan diberi pembayaran *severance* bersamaan dengan jumlah 12 bulan dasar semasa (*current base*) dan tunai bonus  tahunan yang tidak lebih daripada 50% bayaran

Certified Document Number: 60144899 - Page 5 of 25

5

dasar sekiranya berlaku (a) dan atas pilihan beliau di bawah (b) dan (c). Tambahan pula, di bawah butir (b) dan (c) di atas. Walau bagaimanapun, sekiranya Pegawai pulang secara terus kepada Westlake Chemical Corporation selepas penamatan pengajian dengan Syarikat beliau tidak akan berhak kepada peruntukan *severance* yang dinyatakan di atas.

Sebarang penangguhan bagi pihak Syarikat dalam menggunakan hak untuk penamatan tidak seharusnya dianggap sebagai pelepasan.

17.2 Atas penamatan Pengajian, sama ada secara sukarela atau secara tidak suka rela, Pegawai seharusnya serta-merta mengembali kepada Syarikat kesemua bahan-bahan di dalam skop di bawah Klausa 15.2, mana-mana kereta Syarikat, telefon bimbit atau kelengkapan lain Syarikat yang berada di dalam pegangan beliau dan kesemua, kunci, kad kredit, dan lain-lain harta yang atau berkaitan dengan urusan Syarikat atau mana-mana Kumpulan Syarikat yang mana berkemungkinan di dalam milikan atau di bawah pengawalan kuasa beliau.

Klausa 26        Cukai Penyamaan (*Tax Equalization*)

Setakat yang diperlukan untuk memastikan Pegawai tidak menanggung cukai untuk jumlah yang terlebih atau kurang dari apa yang sepatutnya ditanggung jikalau sesuatu tugasan yang ditempatkan di Amerika Syarikat, Pegawai akan layak untuk suatu program cukai penyamaan (*tax equalization program*) untuk merangkumi suatu hitungan cukai secara anggaran dan penyelarasan akhir tahun.

S\N 5HS2C3ALX8Y0
**Note   Serial number will be used to verify the originality of this document via eFILING portal

6

Syarikat akan membayar semua cukai Malaysia yang dikenakan ke atas Pegawai selaras dengan tugasnya. Syarikat akan memberi bantuan penyediaan cukai kepada Pegawai setiap tahun untuk sepanjang tempoh pekerjaan melalui sebuah firma perakaunan luaran, yang kininya ialah PricewaterhouseCoopers.

Klausa 28    <u>Notis-Notis</u>

28.1    Sebarang notis atau dokumen lain yang akan diberikan di bawah Perjanjian ini hendaklah secara bertulis dan boleh diberikan secara kendiri kepada seseorang Pegawai atau kepada Setiausaha Syarikat (mengikut mana-mana yang berkenaan) atau boleh dikirimkan dengan menggunakan pos kelas pertama atau perkhidmatan pos laju yang lain atau dengan penghantaran faks ke, dalam kes Syarikat, pejabat berdaftarnya untuk sementara waktu dan dalam kes Pegawai sama ada ke alamatnya yang ditunjukkan di dalam Perjanjian ini atau ke tempat kediamannya yang terakhir yang diketahui.

28.2    Mana-mana notis sedemikian hendaklah (kecuali yang sebaliknya dapat dibuktikan) dianggap disampaikan apabila urusan biasa secara penghantaran ia akan terlebih dahulu diterima oleh penerima pada waktu-waktu perniagaan biasa. Dalam keadaan pos kelas pertama, ia seharusnya dianggap sebagai tidak lewat daripada dua hari bekerja selepas pengiriman. Untuk pembuktian penyampaian tersebut ia adalah memadai untuk membuktikan, di mana

Certified Document Number: 60144899 - Page 7 of 25

7

sesuai, bahawa notis adalah dialamatkan dengan betul dan diposkan, ataupun bahawa penghantaran faks telah sampaikan.

Klausa 29    <u>Pilihan undang-undang dan penyerahan kepada bidang kuasa</u>

29.1    Perjanjian ini hendaklah tertakluk kepada dan ditafsirkan selaras dengan undang-undang Malaysia.

29.2    Pihak-pihak berserah kepada bidang kuasa eksklusif mahkamah-mahkamah Malaysia tetapi Perjanjian ini boleh dikuatkuasakan oleh Syarikat atau Pegawai di mana-mana mahkamah yang berbidang kuasa kompeten.

Klausa 30    <u>Am</u>

Tempoh tamat atau penamatan Perjanjian ini tidak boleh menjejaskan sebarang tuntutan yang berkemungkinan ada bagi mana-mana pihak terhadap pihak yang satu lagi berkenaan dengan sebarang kemungkiran yang muncul terdahulu atau perlanggaran atau ketidakpatuhan dengan sebarang peruntukan di dalam Perjanjian ini,  ia juga tidak seharusnya memprejudiskan penguatkuasaan atau penerusan penguatkuasaan sebarang peruntukan dalam Perjanjian ini yang mana ia secara nyata atau secara tersirat bertujuan untuk atau mempunyai kesan penguatkuasaan atau penerusan penguatkuasaan pada atau selepas tempoh tamat atau penamatan.

Certified Document Number: 60144899 - Page 8 of 25

8

(c)     Menurut kepada dan berdasarkan Klausa 26 Perjanjian Pekerjaan, PricewaterhouseCoopers ("**PWC**") telah menyediakan dokumen bertajuk Hitungan Penyelesaian 2009 (*2009 Settlement Calculation)* bertarikh 4.7.2010, Hitungan Cukai Penyelesaian 2009 (*2009 Tax Settlement Calculation*) dan Pengiraan Cukai bagi Tahun Taksiran Semasa 2009 (*Tax Computation for Current Year of Assessment 2009*) ("**Hitungan Cukai 2009**") (*2009 Tax Calculation*). Berdasarkan kepada perhitungan PWC, Defendan adalah dikehendaki  membayar sejumlah USD37,369.00 bagi cukai tahun 2009 kepada Plaintif.

(d)     Ketika Hitungan Cukai 2009 dimuktamadkan, ia adalah dipersetujui di antara Plaintif dan Defendan bahawa jumlah USD37,369.00 akan diselesaikan melalui 6 ansuran melalui potongan bulanan daripada gaji Defendan dari Ogos 2010 sehingga Januari 2011. Perjanjian untuk menolak jumlah cukai 2009 daripada gaji Defendan adalah terbukti melalui emel-emel di antara Plaintif dan Defendan bertarikh 17.8.2010 dan siri emel dalaman Plaintif bertarikh 29.6.2010, 2.8.2010, 10.8.2010, 17.8.2010 di mana ia dihadapkan kepada Defendan melalui email bertarikh 17.8.2010.

(e)     Walau bagaimanapun, Defendan telah meletak jawatan sebelum penyempurnaan pembayaran ansuran yang dipersetujui bagi USD37,369.00, maka potongan bulanan hanya dibuat bagi bulan Ogos 2010 (RM19,851.75), September 2010 (RM19,422.02) dan Oktober 2010 (RM19,244.52), bagi baki cukai tahun 2009 berjumlah USD18,685.00 (bersamaan dengan RM57,745.99) Defendant bersetuju untuk membayar melalui satu pembayaran penuh. Pembayaran penuh bagi USD18,685.00 adalah dipotong melalui pembayaran penyelesaian yang dibayar keluar kepada Defendan lanjutan daripada keputusan beliau untuk meninggalkan

S\N 5HS2C3ALX8Y0
**Note : Serial number will be used to verify the originality of this document via eFILING portal

9

pekerjaan di Plaintif. Fakta di mana Defendan telah bersetuju untuk membenarkan Plaintif menolak bayaran baki cukai 2009 berjumlah USD18,685.00 daripada penyelesaian bayaran adalah terbukti di dalam Pengiraan Penyelesaian Terakhir (*Final Settlement Computation*) setakat 9 November 2010 ("**Pengiraan Penyelesaian**") (*Settlement Computation*) yang telah diakui oleh Defendan.

(f)     Pada atau sekitar 9.11.2010, Defendan telah menggunapakai pilihan beliau di bawah Klausa 17 Perjanjian Pekerjaan dan berputus untuk meninggalkan jawatan beliau sebagai Pengarah Urusan Plaintif.

(g)     Adalah terbukti daripada Pengiraan Penyelesaian (*Settlement Computation*) bahawa Defendan telah bersetuju dengan pegangan andaian sejumlah USD74,000.00 (bersamaan RM228,697.00) untuk liabiliti cukai andaiannya bagi tahun 2010 sebelum beliau meninggalkan pengajian Plaintif pada 9.11.2010.

(h)     Selanjutnya, PWC telah menyediakan Hitungan Penyelesaian 2010 (*2010 Settlement Calculation*) Defendan bertarikh 29.6.2011, Hitungan Cukai Penyelesaian 2010 (*2010 Tax Settlement Calculation*) dan Pengiraan Cukai (*Tax Computation*) bagi Tahun Taksiran Semasa Tahun 2010 ("**Hitungan Cukai 2010**") (*2010 Tax Calculation*). Hitungan Cukai 2010 telah mengambil kira potongan sejumlah USD74,000.00 yang telah dibuat melalui Pengiraan Penyelesaian (*Settlement Computation*) dan meskipun yang demikian, Defendan masih berhutang kepada Plaintif sejumlah USD179,220.00 bagi cukai tahun 2010. Sehingga kini, Defendan masih tidak mencabar Hitungan Cukai 2009 dan 2010 mahupun pengiraan bagi yang sama.

Certified Document Number: 60144899 - Page 10 of 25

10

(i)    Plaintif melalui wakilnya telah menuntut daripada Defendan melalui emel bertarikh 21.9.2011 dan juga emel bertarikh 3.10.2011 melampirkan surat bertarikh 3.10.2011 untuk penyelesaikan jumlah USD179,220.00 yang terhutang dan tertunggak kepada Plaintif menurut Klausa 26 Perjanjian Pekerjaan. Walau bagaimanapun, Defendan membalas melalui emel bertarikh 4.10.2011 dan hanya sekadar bertanya mengapa beliau perlu membayar kepada jumlah tersebut.

(j)    Seterusnya, sebagai balasan kepada emel Defendan bertarikh 4.10.2011, Plaintif telah menghantar satu surat lagi kepada Defendan bertarikh 10.10.2011 menjelaskan dasar perhitungan cukai penyamaan dan seterusnya menuntut jumlah USD179,220.00 yang tertunggak dan terhutang kepada Plaintif menurut Klausa 26 Perjanjian Pekerjaan. Tiada sebarang maklum balas kepada surat tersebut.

(k)    Plaintiff melalui peguamcara beliau, Tetuan Ten & Colin, menuntut jumlah USD179,220.00 daripada Defendan melalui surat bertarikh 8.11.2011. Seterusnya, Plaintif juga telah mengarahkan peguamcaranya, Tetuan Legaleye Associates di Mumbai, India untuk mengeluarkan dan menyampaikan surat tuntutan bertarikh 28.4.2012 kepada Defendan. Walau bagaimanapun, sehingga kini, Defendan masih gagal, cuai dan/atau enggan menyelesaikan yang sama mahupun membalas mana-mana surat tersebut.

(l)    Selanjutnya, berdasarkan perkara-perkara yang dihuraikan di dalam perenggan-perenggan di atas, Saman Pemula ini adalah berpatutan dan wajar.

Certified Document Number: 60144899 - Page 11 of 25

11

Alasan-alasan yang menyokong Saman Pemula ini telah dibentangkan dalam Afidavit Sokongan Plaintif diikrarkan oleh **Cheong Peng Khuan** dan difailkan di Mahkamah yang Mulia ini.



BERTARIKH:22-Aug-2013

Bertarikh pada          haribulan              2013

Dora Anak Undau
Pendaftar Kanan
Mahkamah Rendah
Kuala Lumpur

……………………………………
Pendaftar
Mahkamah Sesyen
Kuala Lumpur


## <u>MEMORANDUM YANG HENDAK DITURUNKAN PADA SAMAN</u>

Saman ini diambil oleh **Messrs. Zaid Ibrahim & Co.,** peguam bagi Plaintif tersebut yang alamatnya di Level 19, Menara Milenium, Pusat Bandar Damansara, 50490 Kuala Lumpur.

Saman ini tidak boleh disampaikan lebih daripada 6 bulan kalendar selepas tarikh di atas melainkan diperbaharui oleh perintah Mahkamah.

Sekiranya seorang defendan tidak hadir secara sendiri atau melalui peguam atau peguamcaranya di waktu dan tempat yang disebut di atas perintah akan dibuat sebagaimana yang difikirkan adil dan suai manfaat oleh Mahkamah.

Certified Document Number: 60144899 - Page 12 of 25

12

**SAMAN PEMULA** ini difailkan oleh Messrs. Zaid Ibrahim & Co, peguam bagi Plaintif tersebut yang alamatnya untuk servis di Level 19, Menara Milenium, Pusat Bandar Damansara, 50490 Kuala Lumpur.

| | |
|---|---|
| **No. Telefon:** | **03-2087 9999 / No. Faks: 03-2094 4666/4888** |
| **Rujukan Fail:** | **20131323/TITAN/CJC/SDK/LHM** |

S\N 5HS2C3ALX8Y0
**Note   Serial number will be used to verify the originality of this document via eFILING portal

# ENGLISH TRANSLATION

Certified Document Number: 60144899 - Page 14 of 25

.

IN THE SESSIONS COURT AT KUALA LUMPUR

IN THE FEDERAL TERRITORY OF KUALA LUMPUR, MALAYSIA

<u>ORIGINATING SUMMONS NO:</u>                    <u>-2013</u>

In the matter of Order 5 rule 4. Order 7 and Order 28 of the Rules of Court 2012;

And

In the matter of the Contracts Act 1950;

And

In the matter of section 65(1)(b), and section 65(5)(b) of the Subordinate Courts Act 1948;

And

In the matter of the Employment Agreement dated 10.7.2008;

And

In the matter of the Final Settlement Computation as at 9 November 2010

BETWEEN

LOTTE CHEMICAL TITAN (M) SDN BHD

(formally known as Titan Petchem (M) Sdn Bhd)

(Company No. 154990-W)                    ... PLAINTIFF

AND

WARREN WILLIAM WILDER

(United States of America Passport No.134540601)          ... DEFENDANT

<u>**ORIGINATING SUMMONS**</u>

**LET** Warren William Wilder of 6645 Westchester, Street Houston, Texas 77005, United State of America attend before the Honourable Judge in Chambers on the                    day of                    ,  2013,   at

Translated / Corrected & Certified by me.

.....................................................

MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0

**Note   Serial number will be used to verify the originality of this document via eFILING portal

Certified Document Number: 60144899 - Page 15 of 25

2

am/pm, on the hearing of an application by the Plaintiff above named, for the following Orders:-

(I)     A declaration that the Defendant is in breach of the Employment Agreement dated 10.7.2008 for failing to pay to the Plaintiff the agreed tax equalization sum of USD179,220.00;

(II)    That the Defendant be ordered to pay the Plaintiff the tax equalization sum of USD179,220.00 together with interest calculated at the rate of 5% per annum from the date of 30.6.2011 till the date of the Judgment;

(III)   General Damages;

(IV)    Interest at the rate of 5% per annum on the Judgment Sum from the date of the Judgment until the date of full and final settlement;

(V)     Costs; and

(VI)    Such further or other relief that this Honourable Court deems fit or appropriate.

The facts which constitute the Plaintiff's cause of action for the reliefs sought for in this Originating Summons are as follows:-

(a)     The Defendant was appointed as the Managing Director of the Plaintiff from 10.7.2008 until 9.11.2010 vide an Employment Agreement dated 10.7.2008 ("**Employment Agreement**") entered into between the Plaintiff and the Defendant. Amongst other benefits, the Defendant was paid a

Translated / Corrected &
Certified by me.

.................................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note  Serial number will be used to verify the originality of this document via eFILING portal

3

salary of USD330,000.00 per annum which is payable on/at end of the month in 12 monthly installments, into the Defendant's bank account in the United States.

(b)     The salient clauses of the Employment Agreement, *inter alia*, are as follows:-

Clause 3        Duration of the Employment

The Officer's Employment shall commence 10th July 2008 and, subject to the provisions of this Agreement, shall continue until 9th July, 2013, (the Fixed Term Period), and thereafter the contract will be renewed annually and automatically unless and until terminated by either party with a six (6) month advance written notice prior to the expiry of the contract period.

Clause 17       Termination

17.1    The Chairman of the Board of the Company shall have the discretion to terminate the Employment of the Officer lawfully without any notice, however, in the event of;

(a)     The Officer's involuntary termination, except in the case of misconduct or gross negligence which include, but are not limited to;

(i)     commits any serious breach of this Agreement or is guilty of any gross misconduct, or any willful neglect in the discharge of his duties;

(ii)    repeats or continues (after warning) any breach of this Agreement;

Translated / Corrected & Certified by me.

..................................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

4

(iii)    is guilty of any fraud, dishonesty or conduct tending to bring himself, the Company or any Group Company into disrepute;

(iv)    commits any act of bankruptcy or takes advantage of any statute for the time being in force offering relief for insolvent debtors;

(v)    is convicted of any Malaysian criminal offence (other than minor offences under the Road Traffic Acts or the Road Safety Acts for which a fine or non-custodial penalty is imposed) which might reasonably be thought to affect adversely the performance of his duties;

(vi)    is disqualified from holding office in the Company or in any other company by reason of any order made under the Companies Act 1965 or any other enactment;

(vii)    becomes of unsound mind or becomes a patient for any purpose of any statute relating to mental health;

(b)    A change in controlling ownership of the Company, and, or,

(c)    A change in the Officer's duties and responsibilities that would result in an assignment with lesser responsibilities and status,

Officer will be provided a severance payment equal to the sum of twelve months of the then current base and the annual cash bonus not to exceed 50% of base pay in the event of (a) and at his option under (b) and (c). Additionally, under items (b) and (c) above. However, if the Officer returns directly to Westlake Chemical Corporation after termination

Translated / Corrected & Certified by me.

..................................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

Certified Document Number: 60144899 - Page 18 of 25

S\N 5HS2C3ALX8Y0

**Note   Serial number will be used to verify the originality of this document via eFILING portal

5

of employment with the Company he will not be eligible for the severance provisions outlined above.

Any delay by the Company in exercising its right of termination shall not constitute a waiver of it.

17.2   On the termination of the Employment, whether voluntary or involuntary the officer shall immediately deliver to the Company all materials within the scope of clause 15.2, any Company car, mobile telephone or other Company equipment in his possession and all keys, credit cards, and other property of or relating to the business of the Company or of any Group Company which may be in his possession or under his power or control.

Clause 26   <u>Tax Equalization</u>

To the extent necessary to ensure that the Officer does not incur taxes in amount greater or less than what would be otherwise incurred in event of a USA based assignment, Officer will be eligible for a tax equalization program to include a hypothetical tax calculation and year-end reconciliation. The Company will pay all Malaysian based taxes for which Officer becomes liable pursuant to his assignment. The Company will provide tax preparation assistance to Officer each year throughout the term of employment through an outside accounting firm, currently PricewaterhouseCoopers.

Translated / Corrected & Certified by me.

.....................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note  Serial number will be used to verify the originality of this document via eFILING portal

6

Clause 28      <u>Notices</u>

28.1   Any notice or other document to be given under this Agreement shall be in writing and may be given personally to an Officer or to the Secretary of the Company (as the case may be) or may be sent by first class post or other fast postal service or by facsimile transmission to, in the case of the Company, its registered office for the time being and in the case of the Officer either to his address shown on the face of this Agreement or to his last known place of residence.

28.2   Any such notice shall (unless the contrary is proved) be deemed served when in the ordinary course of the means of transmission it would first be received by the addressee in normal business hours. In the case of first class post, this shall be deemed to be no later than two working days after posting. In proving such service it shall be sufficient to prove, where appropriate, that the notice was addressed properly and posted, or that the facsimile transmission was dispatched.

Clause 29      <u>Choice of law and submission to jurisdiction</u>

29.1   This Agreement shall be governed by and interpreted in accordance with Malaysian law.

29.2   The parties submit to the exclusive jurisdiction of the Malaysia courts but this Agreement may be enforced by the Company or Officer in any court of competent jurisdiction.

Translated / Corrected &
Certified by me.

.........................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note Serial number will be used to verify the originality of this document via eFILING portal

7

Clause 30      General

> The expiration or termination of this Agreement shall not prejudice any claim which either party may have against the other in respect of any pre-existing breach of or contravention of or non-compliance with any provision of this Agreement nor shall it prejudice the coming into force or the continuance in force of any provision of this Agreement which is expressly or by implication intended to or has the effect of coming into or continuing in force on or after such expiration or termination.

(c)      Pursuant to and in accordance with Clause 26 of the Employment Agreement, PricewaterhouseCoopers ("PWC") had prepared a document entitled 2009 Settlement Calculation dated 4.7.2010, 2009 Tax Settlement Calculation and the Tax Computation for Current Year of Assessment 2009 (**"2009 Tax Calculation"**). Premised on the computation by PWC, the Defendant was required to pay the sum of USD37,369.00 for the tax year of 2009 to the Plaintiff.

(d)      At the time when the 2009 Tax Calculation was finalized, it was agreed between the Plaintiff and the Defendant that the sum of USD37,369.00 will be settled via six installments through monthly deductions from the Defendant's salary from August 2010 until January 2011. This agreement to deduct the 2009 tax sum from the Defendant's salary is evidenced through emails between the Plaintiff and the Defendant dated 17.8.2010 and a series of the Plaintiff's internal e-mails dated 29.6.2010, 2.8.2010, 10.8.2010, 17.8.2010 which were forwarded to the Defendant via email dated 17.8.2010.

Translated / Corrected & Certified by me.

......................................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note : Serial number will be used to verify the originality of this document via eFILING portal

8

(e)     However, as the Defendant had resigned prior to the completion of the agreed installment payments for the USD37,369.00, as such monthly deductions were only made for the months of August 2010 (RM19,851.75), September 2010 (RM19,422.02) and  October 2010 (RM19,244.52), for the balance of the year 2009 outstanding tax sum in the amount of USD18,685.00 (equivalent to RM57,745.99), the Defendant agreed to pay the same in one lump sum payment. The lump sum payment of USD18,685.00 was deducted from the settlement payment that was paid out to the Defendant following his decision to leave the Plaintiff's employment. The fact that the Defendant had agreed to allow the Plaintiff to deduct his 2009 outstanding tax payment of USD18,685.00 from his settlement payment is evidenced in the Final Settlement Computation as at 9 November 2010 (**"Settlement Computation"**) acknowledged by the Defendant.

(f)     On or about 9.11.2010, the Defendant had exercised his option under Clause 17 of the Employment Agreement and had decided to leave his position as the Managing Director of the Plaintiff.

(g)     It is evident from the Settlement Computation that the Defendant had agreed to a hypothetical withholding of USD74,000.00 (equivalent to RM228,697.00) for his hypothetical tax liability for the year 2010 prior to his departure from the Plaintiff's employment on 9.11.2010.

(h)     Thereafter, PWC had prepared the Defendant's 2010 Settlement Calculation dated 29.6.2011, 2010 Tax Settlement Calculation  and the Tax Computation for Current Year of Assessment 2010 (**"2010 Tax Calculation"**). The 2010 Tax Calculation had taken into account the deduction of USD74,000.00 already made from the Settlement Computation and despite the same, the Defendant still owed the Plaintiff a sum of USD179,220.00 for the tax year of 2010. To date, the Defendant

Translated / Corrected & Certified by me.

..............................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note   Serial number will be used to verify the originality of this document via eFILING portal

9

has not challenged the 2009 or the 2010 Tax Calculations or the computation of the same.

(i)     The Plaintiff has through its representative demanded from the Defendant vide email dated 21.9.2011 and also email dated 3.10.2011 attaching the letter dated 3.10.2011 to settle the sum of USD179,220.00 due and owing to the Plaintiff pursuant to Clause 26 of the Employment Agreement. However, the Defendant replied via email dated 4.10.2011 and merely asked why he has to pay this amount.

(j)     Subsequently, and in response to the Defendant's email dated 4.10.2011, the Plaintiff sent another letter to the Defendant dated 10.10.2011 explaining the basis of the tax equalization computation and further demanded for the sum of USD179,220.00 due and owing to the Plaintiff pursuant to Clause 26 of the Employment Agreement.  There was no response to this letter.

(k)     The Plaintiff through its solicitors, Messrs Ten & Colin, then demanded the sum of USD179,220.00 from the Defendant vide a letter dated 8.11.2011. Subsequently, the Plaintiff has also instructed its solicitors, Messrs Legaleye Associates in Mumbai, India to issue and serve a letter of demand dated 28.4.2012 to the Defendant. However, to date, the Defendant has failed, neglected and/or refused to settle the said amount nor respond to any of the letters.

(l)     Accordingly, based on the matters set out in the paragraphs above, this Originating Summons is appropriate and justified.

Translated / Corrected &
Certified by me.

..................................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note  Serial number will be used to verify the originality of this document via eFILING portal

10

The grounds in support of this Originating Summons are further set out in the Plaintiff's Affidavit in Support affirmed by **Cheong Peng Khuan** and filed in this Honourable Court.

Dated this             day of                 2013

..................................
Registrar
Sessions Court
Kuala Lumpur

## <u>MEMORANDUM TO BE SUBSCRIBED ON THE SUMMONS</u>

This Summons is taken out by **Messrs. Zaid Ibrahim & Co.,** solicitors for the Plaintiff above named, whose address is at Level 19, Menara Milenium, Pusat Bandar Damansara, 50490 Kuala Lumpur.

This Summons may not be served more than six (6) calendar months after the above date unless renewed by Order of the Court,

If a Defendant does not attend personally or by his counsel or solicitor at the time and place abovementioned such Order will be made as the Court may think just and expedient.

Translated / Corrected & Certified by me.

..............................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note   Serial number will be used to verify the originality of this document via eFILING portal

11

This **ORIGINATING SUMMONS** is filed by Messrs. Zaid Ibrahim & Co, solicitors for the Plaintiff above named, whose address for service is at Level 19, Menara Milenium, Pusat Bandar Damansara, 50490 Kuala Lumpur.

Telephone No:      03-2087 9999  /  Facsimile No: 03-2094 4666/4888
File Reference:      20131323/TITAN/CJC/SDK/LHM

Certified Document Number: 60144899 - Page 25 of 25

Translated / Corrected &
Certified by me.

............................................
MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

S\N 5HS2C3ALX8Y0
**Note   Serial number will be used to verify the originality of this document via eFILING portal



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 11, 2014


Certified Document Number:      60144899 Total Pages:  25




Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS




**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT C

B54-37-08/2013

5077116 9000146909 27/12/2013 16:00:48
B54-37-08/2013
SP12...........................40.0 X 1
****************40.00

**DALAM MAHKAMAH SESYEN DI KUALA LUMPUR**

**DALAM WILAYAH PERSEKUTUAN KUALA LUMPUR, MALAYSIA**

**SAMAN PEMULA NO: B54-37-08/2013**

> Dalam perkara mengenai Aturan 5 Kaedah 4, Kaedah-kaedah 7 and 28 Kaedah-kaedah Mahkamah 2012;
>
> Dan
>
> Dalam perkara mengenai Akta Kontrak 1950;
>
> Dan
>
> Dalam perkara mengenai seksyen 65(1)(b) dan seksyen 65(5)(b) Akta Mahkamah Rendah 1948;
>
> Dan
>
> Dalam perkara mengenai Perjanjian Pekerjaan bertarikh 10.7.2008;
>
> Dan
>
> Dalam perkara mengenai Hitungan Penyelesaian Terakhir setakat 9.11.2010.

ANTARA

LOTTE CHEMICAL TITAN (M) SDN. BHD..

(sebelum ini dikenali sebagai Titan Petchem (M) Sdn. Bhd.)

(No. Syarikat: 154990-W)                                      ...PLAINTIF


DAN

WARREN WILLIAM WILDER

(No. Pasport Amerika Syarikat: 134540601)            ...DEFENDAN


**DI HADAPAN PUAN ROHANI BT ISMAIL**

**HAKIM, MAHKAMAH SESYEN KUALA LUMPUR**

**PADA 6 DISEMBER 2013**                          **DALAM KAMAR**


**PERINTAH**

**(LAMPIRAN 4)**

S\N FNH59SGFTN2V
**Note  Serial number will be used to verify the originality of this document via eFILING portal

Certified Document Number: 60144900 - Page 2 of 7

**ATAS PERMOHONAN** Plaintif yang dinamakan di atas **DAN SETELAH MEMBACA** Saman Pemula bertarikh 22.8.2013 dan Afidavit Sokongan yang diikrarkan oleh Cheong Peng Khuan pada 22.8.2013, **DAN SETELAH MENDENGAR** Cik Saritha Devi Kirupalani, peguamcara bagi pihak Plaintif **MAKA ADALAH DIPERINTAHKAN:-**

(I)    Bahawa Defendan telah memungkiri Perjanjian Pekerjaan bertarikh 10.7.2008 kerana gagal membayar kepada Plaintif cukai penyamaan (*tax equalization*) yang dipersetujui berjumlah USD179,220.00;

(II)   Bahawa Defendan diperintahkan untuk membayar kepada Plaintif cukai penyamaan (*tax equalization*) berjumlah USD179,220.00 bersama dengan faedah pada kadar 5% setahun dari 30.6.2011 sehingga tarikh Penghakiman;

(IV)   Faedah pada kadar 5% setahun atas Jumlah Penghakiman dari tarikh Penghakiman ini sehingga tarikh penyelesaian penuh dan muktamad; dan

(V)    Kos :

| | | | |
|---|---|---|---|
| 1. | Pemfailan Saman Pemula | RM | 200.00 |
| 2. | Pemfailan Afidavit Sokongan | RM | 8.00 |
| 3. | Pemfailan Perintah 6.12.2013 | RM | 40.00 |
| 4. | Pemfailan Notis Permohonan penyampaian ganti | RM | 20.00 |
| 5. | Pemfailan Afidavit Sokongan | RM | 8.00 |
| 6. | Pemfailan Perakuan Segera | RM | 40.00 |
| 7. | Pemfailan Perintah 21.10.2013 | RM | 40.00 |
| 8. | Pemfailan Afidavit Penyampaian | RM | 8.00 |
| 9. | Kos Pesuruhjaya Sumpah:- | | |
| | Afidavit Sokongan Saman Pemula & Exhibit | RM | 26.00 |
| | Afidavit Sokongan Notis Permohonan penyampaian | | |

S\N FNH59SGFTN2V
**Note   Serial number will be used to verify the originality of this document via eFILING portal

Certified Document Number: 60144900 - Page 3 of 7

3

| | | | |
|---|---|---|---|
| ganti & Exhibit | | RM | 22.00 |
| Afidavit Penyampaian & Exhibit | | RM | 14.00 |
| | Jumlah | RM | **426.00** |

Bertarikh 06 Disember, 2013.

Saklah Bt Abdullah
Pendaftar
Mahkamah Rendah
Kuala Lumpur
..................................................
Penolong Pendaftar

Mahkamah Sesyen

Kuala Lumpur

06/01/2014

**PERINTAH** ini difailkan oleh Tetuan Zaid Ibrahim & Co., peguamcara bagi Plaintif yang mempunyai alamat penyampaian di Level 19, Menara Menara Milenium, Jalan Damanlela, Pusat Bandar Damansara, 50490 Kuala Lumpur.

**No. Telefon :**    03-2087 9999   /   **No. Faksimili: 03-2094 4888/4666**
**Rujukan Fail:**    20131323/TITAN/CJC/SDK

S\N FNH59SGFTN2V
**Note : Serial number will be used to verify the originality of this document via eFILING portal

Certified Document Number: 60144900 - Page 4 of 7

# IN THE SESSIONS COURT AT KUALA LUMPUR
## IN THE FEDERAL TERRITORY OF KUALA LUMPUR, MALAYSIA
### ORIGINATING SUMMONS NO: B54-37-08/2013

In the matter of Order 5 rule 4 Order 7 and Order 28 of the Rules of Court 2012;

And

In the matter of the Contracts Act 1950;

And

In the matter of section 65(1)(b) and section 65(5)(b) of the Subordinate Courts Act 1948;

And

In the matter of the Employment Agreement dated 10.7.2008;

And

In the matter of the Final Settlement Computation as at 9.11.2010.

BETWEEN

LOTTE CHEMICAL TITAN (M) SDN BHD
(formally known as Titan Petchem (M) Sdn Bhd)
(Company No. 154990-W)                                              ... PLAINTIFF

AND

WARREN WILLIAM WILDER
(United States of America Passport No.134540601)         ... DEFENDANT

**BEFORE HER HONOUR PUAN ROHANI BT ISMAIL**
**SESSIONS COURT JUDGE, KUALA LUMPUR**
**THIS 6TH DAY OF DECEMBER 2013**                      **IN CHAMBERS**

**ORDER**
**(ENCLOSURE 4)**

Translated / Corrected & Certified by me.

MAZLINA BT MUSTAFA.
Certificated Interpreter
High Court
Kuala Lumpur

**UPON THE APPLICATION** of the abovenamed Plaintiff **AND UPON READING** the Originating Summons dated 22.8.2013 and the Affidavit in Support affirmed by Cheong Pang Khuan on 22.8.2013 **AND UPON HEARING** Ms. Saritha Devi Kirupalani, counsel for the Plaintiff **IT IS HEREBY ORDERED**:-

(I)     That the Defendant is in breach of the Employment Agreement dated 10.7.2008 for failing to pay to the Plaintiff the agreed tax equalization sum of USD179,220.00;

(II)    That the Defendant be ordered to pay the Plaintiff the tax equalization sum of USD179,220.00 together with interest calculated at the rate of 5% per annum from the date of 30.6.2011 till the date of the Judgment;

(IV)    Interest at the rate of 5% per annum on the Judgment Sum from the date of the Judgment until the date of full and final settlement; and

(V)     Costs:

| | | | |
|---|---|---|---|
| 1. | Filing of Originating Summons | RM | 200.00 |
| 2. | Filing of Affidavit in Support | RM | 8.00 |
| 3. | Filing of Order dated 6.12.2013 | RM | 40.00 |
| 4. | Filing of Notice of Application of substituted service | RM | 20.00 |
| 5. | Filing of Affidavit in Support | RM | 8.00 |
| 6. | Filing of Certificate of Urgency | RM | 40.00 |
| 7. | Filing of Order dated 21.10.2013 | RM | 40.00 |
| 8. | Filing of Affidavit of Service | RM | 8.00 |
| 9. | Costs for Commissioner for Oaths:- | | |
| | Affidavit in Support for Originating Summons & Exhibits | RM | 26.00 |
| | Affidavit in Support for Notice of Application of | | |

Translated / Corrected &
Certified by me.

MA ___ A P. MUSTAFA.
C ___ Interpreter
___
K ___ Lu ___

Certified Document Number: 60144900 - Page 6 of 7

- 3 -

| | | | |
|---|---|---|---|
| substituted service & Exhibits | | RM | 22.00 |
| Affidavit of Service & Exhibits | | RM | 14.00 |
| | Total | **RM** | **426.00** |

Dated this 6th day of December 2013.

........................................
Assistance Registrar

Sessions Court

Kuala Lumpur

This   **ORDER** is filed by Messrs. Zaid Ibrahim & Co., solicitors for the Plaintiff. Messrs Zaid Ibrahim & Co , has its address for service at Level 19, Menara Menara Milenium, Jalan Damanlela. Pusat Bandar Damansara. 50490 Kuala Lumpur.

| | | |
|---|---|---|
| **Telephone No.** | : | **03-2087 9999  /  Facsimile No: 03-2094 4888/4666** |
| **File Reference** | : | **20131323/TITAN/CJC/SDK** |

Translated / Corrected & Certified by me.

....................................
MALINA BT MUSTAFA.
Certified Interpreter
High Court
Kuala Lumpur



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   April 11, 2014

Certified Document Number:        60144900 Total Pages:  7

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

3/24/2014 6:14:44 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 801624
By: CARLTON, SHARON J

CAUSE No. 2014-_____

| | | |
|---|---|---|
| LOTTE CHEMICAL TITAN (M) SENDIRIAN BERHAD, | § § § | IN THE DISTRICT COURT |
| Judgment Creditor, | § § | |
| VS. | § § | _____ JUDICIAL DISTRICT |
| WARREN WILDER, | § § | |
| Judgment Debtor | § § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT

Before me, the undersigned notary, on this day personally appeared Charles M. Rosson, whose identity is known to me. After I administered an oath, Mr. Rosson testified as follows:

1.　　I, Charles M. Rosson, am an attorney authorized to represent Judgment Creditor Lotte Chemical Titan (M) Sendirian Berhad f/k/a Titan Petchem (M) Sendirian Berhad ("***Titan Petchem***") in the above matter. My mailing address is 1001 Fannin Street, Suite 2500, Houston, Texas 77002.

2.　　Judgment Creditor Titan Petchem's last known mailing address is 6th floor, Bangunan Malaysian Re, No. 17, Lorong Dungun, Damansara Heights, 50490 Kuala Lumpur, Malaysia.

3.　　Judgment Debtor Warren Wilder's last known mailing address is 6645 Westchester Street, Houston, Texas 77005.

_____
Charles M. Rosson

Certified Document Number: 60144902 - Page 1 of 2

Sworn and subscribed to before me by Charles M. Rosson on **March 24**, 2014.

*Ny D. Hebel*

Notary Public in and for the State of Texas
My commission expires: **10/30/2016**

NANCY D. HIEFNER
Notary Public, State of Texas
My Commission Expires
October 30, 2016

US 2370163v.1

2



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   April 11, 2014

Certified Document Number:        60144902 Total Pages:  2

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**